UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-22527-CIV-HIGHSMITH/DUBÉ

JIM E. ASHWORTH, JR.,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) and the Motion for Summary Judgment filed by the Defendant (D.E. #18) pursuant to an Order of Reference entered by the Honorable Shelby Highsmith, United States District Judge. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Jim E. Ashworth, Jr. (hereinafter "Ashworth" or "Plaintiff").

### I. FACTS

Ashworth filed an application for disability insurance benefits on November 9, 2001. (R.50).[1] This application, which asserted disability as of April 3, 2001, was denied initially and on reconsideration. (R. 31, 37). Following a hearing (R. 455-484), the ALJ issued a decision denying the request for benefits. (R. 12-23). A request for review filed with the Appeals Council (R. 451) was denied. (R. 6).

The Plaintiff, age 59 at the time of the hearing on December 9, 2004, testified that he had a

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Masters Degree in Political Science, but had not worked in approximately four years. (R. 458-459). Ashworth added that his prior work was as an automobile technician and shop foreman. (R. 459). The Plaintiff stated that he stopped working following an automobile accident on the work premises which resulted in restrictions. (R. 460). Ashworth testified that he injured his neck, shoulder and lower back in the accident and required medication, physical therapy and the use of a TENS machine. (R. 461-462). The Plaintiff added that the inability to return to work caused him to be "devastated" and resulted in weight gain, excessive smoking and depression, which required visits to a psychiatrist. (R. 463-464).

Ashworth stated that he slept four to five hours per night and had been diagnosed with sleep apnea. (R. 465-466). He added that he took several short term naps throughout the day. (R. 467). The Plaintiff also testified that he suffered from problems with his right knee and his feet, as well as problems sitting. (R. 468-469). Ashworth estimated that he could only sit for 15 to 20 minutes before suffering back pain and nervousness. He added that he could probably stand in one place for only 20 minutes, walk about 100 yards, and carry approximately 15 pounds. (R. 469-470). Ashworth also testified that he suffered from severe acid reflux, shoulder and neck pain and numbness in his right hand. (R. 471-472).

The Plaintiff described his prior work as involving hardly ever sitting down, as well as having to bend, lift and perform other movements to inspect the vehicles. (R. 474-476). Ashworth added that his level of depression varied, but he retained strong feelings about not being offered work he could perform from his prior employer. (R. 479).

Susan Lazarus, a vocational expert, also testified at the hearing. Lazarus classified the Plaintiff's prior work as an auto mechanic as skilled/medium and his work as a supervisor as

skilled/medium to heavy as performed. (R. 481). The ALJ presented Lazarus with a hypothetical of an individual with similar work background, age and education as the Plaintiff who was limited to medium work and the ability to perform only occasional detailed work. In response, Lazarus testified that there would be certain assembly jobs and simple machine operator jobs which could be performed. (R. 481-482).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. The report of the MRI performed on February 14, 2001 lists an impression of a posterior disc bulge and posterior osteophytes at C6-C7 and posterior disc bulges at C4-C5 and C5-C6. (R. 110-111). The report of a stress test performed on September 13, 2001 indicates that the Plaintiff lasted on the treadmill for 7 minutes when the test was terminated due to dyspnea. The report lists a normal stress result and indicates a low probability of underlying coronary artery disease. (R. 135-136).

The report of a neurological consultation conducted on November 5, 2001, by Kenneth C. Fischer, M.D., recounts the Plaintiff's work injury to his neck and right shoulder as well as the course of treatment including physical therapy, Vioxx, and a TENS unit. (R. 126). Examination showed that the Plaintiff had neck pain radiating into his right arm with tingling, was very anxious and had low back pain. (R. 126). A reduced right lateral range of motion was noted in the head and neck. Motor strength was 5/5 with no drift or atrophy; sensory examination was normal and the deep tendon reflexes were symmetrical. (R. 127). Ashworth was able to walk normally on tiptoes, heels and tandem and there was no spasm or tenderness in the back. Dr. Fischer listed an impression of cervical radiculopathy clinically as well as carpal tunnel syndrome. (R. 128).

The Plaintiff returned for a follow-up visit with Dr. Fischer on February 1, 2002. The notes of the visit recount MRI results which showed diffuse spondylosis without cord compression and

3

without significant discal herniation. Examination showed mild reduction of cervical mobility with good motor strength, symmetrical reflexes, but a positive right Tinel's sign and right median nerve sensory loss. Depression was also noted and Dr. Fischer recommended additional psychiatric evaluation. (R. 195).

The notes of an April 2, 2002 examination showed the Plaintiff to be somewhat less depressed. Ashworth had reduced cervical mobility with some tenderness, good motor strength and symmetrical reflexes with positive Tinel's and Phelan's signs bilaterally more prominent on the right. Dr. Fischer found the Plaintiff to be stable with mild cervical radiculopathy, carpal tunnel syndrome and secondary depression. The Plaintiff was to return as needed. (R. 194).

On February 11, 2002, the Plaintiff was examined by Joel Schapiro, M.D. The report of the examination indicates that the Plaintiff suffered from radicular symptoms involving the right upper extremity and that treatment included intermittent use of a TENS unit and Celebrex. (R. 159). The Plaintiff reported that the pain was exacerbated by extremes of reaching, lifting, bending, stooping, squatting, climbing, crawling, balancing and sitting for sustained periods of time. (R. 159).

Examination showed that the Plaintiff ambulated with a normal heel to toe gait, did not limp and did not utilize an assistive device for ambulation. (R. 160). No functional impairment was seen in the cranial nerves and there was no significant motor weakness present. Superficial sensation was decreased along the distribution of the ulnar nerves to the hands, with the right greater than the left. No cyanosis or clubbing was present in the digits and there was no evidence of current, acute joint inflammation. Additionally, no significant loss of range of motion was present in any major joint with the exception of the cervical spine. Dr. Schapiro found 80 percent of grip strength remaining on the right and digital dexterity was preserved. The Plaintiff had no difficulty in getting up from

a chair, getting on/off the exam table, walking toe and heel, squatting and arising and hopping on one leg. (R. 161).

The report listed an assessment of multiple arthralgias, cervical discogenic disease and bilateral carpal tunnel syndrome. Additionally, a history of depression and adult ADD was noted. The Plaintiff was seen as having intact recent and remote memory; intact thought processes; an appropriate affect and no signs of hallucinations or delusions. Ashworth was found to be mildly depressed, but Dr. Schapiro stated that he found no evidence of significant mental impairment and that further psychiatric evaluation was not warranted. (R. 164).

A Psychological Evaluation prepared as the result of a mental status examination conducted by John Egbeazien Oshodi, Ph.D., on February 16, 2002, was also submitted. (R. 165-167). The report describes the Plaintiff as somewhat shabbily dressed, but oriented as to place, person and time. The Plaintiff's mood during the evaluation was seen as marked with helplessness, frustration, withdrawal and painful emotions. Ashworth's speech pattern and quality of thinking were clear and coherent, but marked with withdrawn intonation. Suicidal, homicidal and hallucinatory ideations were denied and his concentration and memory functioning were limited by feelings of withdrawal. The report listed a diagnosis of mood disorder due to medical conditions with depressive features. (R. 167). The evaluation concludes as follows:

> In addition to his apparent poor personal hygiene, depressed emotions and reports of physical tension, his ability to adequately focus and attend to tasks remains poor. Given these ongoing difficulties, his ability to concentrate and focus on tasks remains deficient. His ability to adequately engage in competitive tasks, particularly in his area of experience, is highly deficient. He showed marked signs of poor persistence and low frustration tolerance skills. His social interaction skills were marked with withdrawal. In all, his ability to adequately engage in work tasks is poor.

(R. 167).

A Physical Residual Functional Capacity Assessment dated February 21, 2002 found that the Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds; stand/walk or sit for 6 hours of an 8 hour day and had unlimited ability to push/pull. (R. 169). There were no postural, manipulative, visual, communicative or environmental limitations present. (R. 170-172).

A Psychiatric Review Technique dated February 28, 2002, found the presence of an affective disorder. (R. 180, 183). The Technique also found that the Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (R. 190).

A Mental Residual Functional Capacity Assessment prepared on the same date found that the Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions and in the ability to maintain attention and concentration for extended periods. All other categories were found "Not Significantly Limited." (R. 176-177).

Records of treatment from May 2001 through April 2002 with Kenneth R. Hodor, M.D., of South Florida Orthopaedics were also submitted. (R. 196-213). The report from the initial consultation on May 9, 20001 indicates complaints of neck pain and pain radiating to the dorsal of the right shoulder and down the right arm. (R. 208). Examination showed that the Plaintiff stood with his head tilted slightly to the right, shoulder shrug was equal and symmetric, but with discomfort on the right. Guarding and tightness were also noted at C6-7 and C7-T1 on the right. Pain was present with range of motion and right lateral rotation and left lateral rotation. (R. 210). Full range of motion was noted in the wrists and sensory examination revealed hyperesthesias of the right hand. X-rays of the cervical spine showed multi-level cervical spondylitic changes and some

narrowing of the neuroforamen proximally. Definite facet arthritic changes were noted at the levels of C2-3 and C3-4. The x-rays of the right shoulder showed no evidence of fracture or dislocation. (R. 211).

Dr. Hodor listed an impression of status post motor vehicle accident with injury to the cervical spine and persistent C8-T1 cervical radiculitis superimposed on underlying osteoarthritic cervical spine with multiple spurs and degenerative spondylitic changes. (R. 211). The treatment plan included nerve conduction studies, the use of a TENS unit and Vioxx. Dr. Hodor added that the Plaintiff was not able to do any heavy lifting, pushing or pulling greater than 10 pounds and no over head shoulder pushing, pulling or lifting. Ashworth was able to perform "light sedentary work consisting of sit to stand." (R. 212).

The Plaintiff returned to Dr. Hodor on August 8, 2001, with reports of increasing difficulty with sleeping and breathing. Dr. Hodor found that the Plaintiff could not return to his regular duties, but was capable of working with the restrictions previously imposed. (R. 206). The notes of a September 5, 2001 visit indicate that the Plaintiff continued to have problems with his neck and upper trapezius regions. No obvious atrophy was seen on examination, and the Plaintiff's shoulder shrug was equal and symmetric. Ashworth had pain on abduction and external rotation maneuvers on the right. (R. 204-205). Dr. Hodor suggested that the Plaintiff continue with the TENS unit and with the same work restrictions noted in the May 9, 2001 report. (R. 205).

The Plaintiff was seen as essentially unchanged during an October 3, 2001 visit and the restrictions previously imposed were continued. (R. 203). The notes of a November 14, 2001 visit recount the results of a recent MRI scan which did not show any definite tear in the supraspinous tendon. Continued discomfort was noted during abduction and external rotation which Dr. Hodor

found was "suggestive of a mild impingement type phenomena about the right shoulder." (R. 201). The report also notes that Ashworth had seen a re-employment counselor to determine if some type of work could be found to assist the Plaintiff. The restrictions on the Plaintiff remained unchanged and Dr. Hodor recommended pool or aquatic therapy. (R. 201-202).

Ashworth returned to Dr. Hodor on February 6, 2002 and the orthopedic symptoms were seen as essentially unchanged. The Plaintiff remained on modified light duty status. (R. 200). The notes of a March 13, 2002 visit indicate continuing discomfort at the base of the cervical spine and the right shoulder area. Dr. Hodor recommended that the Plaintiff continue with therapy and strengthening. The work restrictions remained as previously noted. (R. 198). On April 23, 2002, the Plaintiff returned to Dr. Hodor with complaints of pain in the supraspinatus area of the shoulder and the paracervical region bilaterally. (R. 196). Ashworth expressed problems with sleep disturbance, difficulty with activities of daily living, depression and agitation. According to Dr. Hodor, the Plaintiff was in need of psychiatric evaluation and treatment. (R. 196).

The report of a consultative psychological evaluation performed by Laura M. Artiles, Ph.D., on August 26, 2002 described the Plaintiff as walking with difficulty and constantly moving in the chair once he sat down. The Plaintiff maintained adequate eye contact and communication skills. (R. 215). According to the report, the Plaintiff's expression of affect was adequate to his thought content and he indicated he felt very depressed about being unable to work. Ashworth also stated that he had difficulty sleeping, was tearful most of the time, felt useless and insecure and sometimes became angry and irritated. (R. 218).

The Plaintiff was seen as alert and coherent, with adequate judgment and abstract thinking, no significant memory problems and no delusions. Ashworth was also more distracted and self-

8

absorbed with his problems, which impacted his overall concentration and memory. The report also described the Plaintiff's daily living activities as including staying in bed doing nothing or moving around the house feeling desperate and anxious. Ashworth also indicated that he isolated himself from his friends. According to the report, the Plaintiff was able to prepare light meals for himself and take care of his hygiene needs with some assistance from his wife in taking a bath and getting dressed. (R. 216). The report listed suggested diagnoses of anxiety disorder and depressive disorder. (R. 215).

The report of a consultative examination performed by Nsidibe Ikpe, D.O. on August 28, 2002, lists the Plaintiff's chief complaints as neck, right shoulder and low back pain. (R. 217). The Plaintiff described the pain as stabbing, intermittent right shoulder pain accompanied by numbness and tingling of the hand. Ashworth rated the pain as a five to eight on a ten point scale and added that it was triggered by any physical activity. (R. 217).

Examination showed the Plaintiff to be awake, alerted, oriented, well nourished, obese and in no acute distress. (R. 219). Mild tenderness was observed in the back and there was joint pain in the right shoulder, but no swelling or deformity. The Plaintiff had grip strength of 4/5 in the right hand and 5/5 in the left hand. Leg strength was 5/5 in both legs, with no joint pain, swelling, deformity or muscle atrophy in the lower extremities. All joint groups and range of motions in the left upper extremity and the lower extremities were within normal range, but the right upper extremity was decreased. The Plaintiff was able to perform the toe and heel walking test, had a normal gait and did not require any assistive devices. (R. 220).

A neurological examination showed motor functions in all groups of the left upper and lower extremities were 5/5, but that the right upper extremity was 4/5. Deep tendon reflexes were 2/4 and

9

intact. Ashworth was described as alert, awake and oriented as to time, place and person. The Plaintiff had a normal affect, but had occasional suicidal ideations when he was very depressed. (R. 220). The report listed diagnostic impressions of neck pain secondary to injury, right shoulder pain secondary to injury and posterior disc bulge at C6-C7 with bilateral foraminal narrowing. (R. 221).

A Physical Residual Functional Capacity Assessment dated September 12, 2002 found that the Plaintiff could lift/carry 50 pounds occasionally, 25 pounds frequently; stand/walk or sit for 6 hours of an 8 hour day and had unlimited ability to push/pull. (R. 224). No postural, manipulative, visual, communicative or environmental limitations were present. (R. 225-227).

A Psychiatric Review Technique dated September 13, 2002, found the presence of affective and anxiety-related disorders. (R. 235, 238, 240). A Mental Residual Functional Capacity Assessment prepared on the same date found that the Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions; in the ability to maintain attention and concentration for extended periods and in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. All other categories were marked "Not Significantly Limited." (R. 231-232).

Records from the Plaintiff's physical therapy at Healthsouth Rehabilitation Hospital for the period of June 2001 through October 2002 were also submitted. These records reflect the Plaintiff receiving aquatic therapy and having pain levels in the neck, right shoulder and back rating five to seven on a ten point scale. (R. 249-350). Additional records were submitted from the Plaintiff's stay at South Miami Hospital from January 27, 2003 to January 28, 2003 for acute appendicitis (R. 351-382), as well as those relating to the Plaintiff's sleep apnea (R. 383-400) and a gastroscopy in October 2002. (R. 434-442).

Notes from Allen Singer, M.D., reflect visits from 2000 through 2004. The notes indicate depression in 2001 following his accident and unemployment (R. 407-408). No visits were noted from October 2001 until January 2003, when the Plaintiff returned with concerns over being depressed, anxious and irritable. Dr. Singer prescribed Wellbutrin and medication to assist the Plaintiff with cutting down on smoking. (R. 406). In February 2003, the Plaintiff reported cutting down on his cigarettes from three packs a day to one pack a day. (R. 405). The notes of a May 6, 2003 visit state that the medications were helpful with the Plaintiff's mood and anxiety, but that the Plaintiff was still "ADD-ish." (R. 404).

On November 25, 2003, the Plaintiff reported that he was "doing ok" and had cut his smoking down to three cigarettes a day. He also indicated that he was sleeping well, felt stable and stated that he was "really happy about myself." (R. 403). The notes of a September 24, 2004 visit state that the Plaintiff felt depressed at the end of the day and was trying to stay busy. The Plaintiff continued to have problems with his arm, but did work on his own bikes for an hour or two at a time until his fingers became numb. Ashworth also reported no social interaction but that he occasionally had guests. (R. 401).

Two additional exhibits were submitted to the ALJ following the hearing. The first, a Medical Assessment of Ability to do Work Related Activities dated December 10, 2004, prepared by chiropractor David Ferguson, found that the Plaintiff could lift/carry 5 to 10 pounds for less than 1/3 of the day, sit for 3 hours a day (1 hour without interruption) and could never climb, balance, stoop, crouch, kneel or crawl. Reaching and pushing/pulling were also found to be affected by the Plaintiff's impairment. According to the assessment, the Plaintff could not perform either light or sedentary work on a sustained basis. (R. 443-446).

The second exhibit, a Medical Assessment of Ability to do Work-Related Activities (Mental) prepared by Allen Singer, M.D., on December 10, 2004, found that the Plaintiff had a good ability to follow work rules; fair ability in the areas of relating to co-workers, dealing with the public, using judgment, interacting with supervisors and functioning independently. A poor ability was found in the areas of dealing with work stress and maintaining attention/concentration. (R. 448). Additionally, the assessment found that the Plaintiff had a fair ability to understand, remember and carry out complex job instructions and a good ability to understand, remember and carry out detailed or simple job instructions. (R. 449). The Plaintiff also had a fair ability to maintain personal appearance, but his ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability was seen as poor. According to Dr. Singer, the Plaintiff was not able to manage substantial stressful situations. (R. 449). Dr. Singer also added the following comment concerning the Plaintiff's condition:

> Significant decrease in functioning due to affective disorder, anxiety; primary disorder is physical but mental state decline clearly is contributory.

(R. 449).

On February 4, 2005, the ALJ issued a decision finding that the Plaintiff's impairments of arthralgias, cervical discogenic disease and mood disorder were severe, but that the impairments did not meet or equal the severity in the listing of impairments. The ALJ also found the Plaintiff's allegations regarding his limitations were not totally credible and that the Plaintiff had the residual functional capacity to perform medium work with non-exertional (mental) limitations. (R. 22). Based on this determination, the ALJ concluded that the Plaintiff could not perform his past relevant work, but could perform the requirements of other work existing in the national economy.

12

Accordingly, the ALJ found that the Plaintiff was not disabled. (R. 22).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure

by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the

evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case, the ALJ found, at step five, that the Plaintiff could not perform his past relevant work, but retained the residual functional capacity for medium work with non-exertional mental limitations, and thus, was not disabled. The Plaintiff contends that the ALJ erred by relying on the opinions of non-examining physicians; by failing to properly evaluate the Plaintiff's impairments and by not evaluating certain physical and mental assessments.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

In the present case, the Plaintiff argues that the ALJ erred by rejecting the limitations regarding lifting found by Dr. Hodor in favor of the conclusions reached by the non-examining state agency physicians. In his decision, the ALJ recounted the restrictions imposed by Dr. Hodor as well

as the other evidence presented, including the Plaintiff's testimony, and found as follows:

> In sum, the undersigned finds that the claimant is able to perform a significant range of medium work. Specifically, he can lift and carry up to 50 pounds occasionally and 25 pounds frequently. He can sit, and stand and/or walk for about 6 hours (per activity) in an 8-hour workday. He is not limited in terms of pushing and pulling and has no postural, manipulative, visual, communicative or environmental limitations. In this regard, the undersigned finds the analyses of the State Agency medical consultants contained in Exhibits 7F and 12F to be well-supported and not inconsistent with other substantial evidence of record. As a result, those opinions are given significant weight. See 20 CFR 404.1527(d) and (f); Social Security Rulings 96-2p, 96-6p, 96-8p.

(R. 19).

This Court agrees with the Plaintiff that the ALJ incorrectly placed great reliance on the findings by the non-examining physicians which presented conclusions which were not consistent with the other medical evidence of record. This evidence showed the presence of documented conditions and included specific findings by treating physician Dr. Hodor that the Plaintiff was limited in his abilities. The ALJ failed to set forth a basis for rejecting the limitations found by the treating doctor or for affording great weight to the non-examining physicians. Accordingly, it is recommended that the cause be remanded for a redetermination of the Plaintiff's residual functional capacity.

In his second argument, the Plaintiff contends that the ALJ should have found that the carpal tunnel syndrome and radiculopathy were severe impairments. While the record contains evidence of these conditions, the Plaintiff has failed to show that the conditions rise to the level of severity asserted, and thus, there is no basis for error. Additionally, this Court notes that the Plaintiff's overall abilities and limitations will properly be taken into consideration on remand as part of the

redetermination of the residual functional capacity.

In his final argument, the Plaintiff argues that the ALJ failed to evaluate two assessments submitted after the hearing in this cause. The first report (R. 445), submitted by a chiropractor, should be rejected as not being from an acceptable source, and, in any event, was not supported by any treatment records. See, Crawford v. Commissioner, 363 F.3d 1155, 1160 (11th Cir. 2004). Thus, there is no basis for error as to this assessment.

The second assessment, from Dr. Singer, was prepared by an acceptable treating source who has provided treatment notes. Thus, the ALJ should have considered this assessment as part of the decision and given it the weight deemed appropriate. However, that was not done in this case and this failure constitutes error. Accordingly, it is recommended that the assessment by Dr. Singer (R. 448-450) be evaluated and discussed by the ALJ as part of the remand recommended previously by this Court.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the decision by the Commissioner is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is the recommendation of this Court that the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) be **GRANTED in part;** the Motion for Summary Judgment filed by the Defendant (D.E. #18) be **DENIED** and this cause be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Shelby Highsmith, United States District Judge. Failure to file objections timely shall

bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this \_\_\_18\_\_\_ day of January, 2007.

_____
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Shelby Highsmith
   Marlene Rodriguez, AUSA
   Lilli W. Marder, Esq.